The Honorable and the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or corporate business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their petition, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated, please. All right, the first case we're going to hear today is Houck v. LifeStore Bank, and I guess Mr. Perry will hear from you first. Your Honor, may it please the Court, I am Shane Perry for the plaintiff, Houck, the plaintiff appellant. Would Your Honor want to keep your voice up? I don't know where your speaker is. Do you have a speaker there? I have a speaker right here, Your Honor. Can you hear me now? That's getting better. That's getting better. I'll project more. I apologize, Your Honor. Would Your Honor like for me to start with the appealability argument and go straight into our appeal? Well, I can tell you the overarching issue seems to be that we had a final judgment in 2014. Defendants two and three were dismissed, and that wasn't appealed at the time. So the question is, should we somehow be hearing it again today? I think that if you were able to put that to rest, that would help a lot. Thank you, Your Honor. I'll do that. There was a final judgment document filed in 2014. The Supreme Court and Bankers Trust said that there is a requirement. We must have a separate document that is final for all claims against all parties. There should be a mechanical application of that rule, and the rule should prevent the loss of the right of appeal and not prevent or facilitate the loss of the appeal. Let's get the facts a little bit straight and see if I understand them. You appealed Defendant 1 for an interlocutory appeal because Defendants 2 and 3 were still in the case. Defendants 2 and 3 were dismissed in February of 2014, and under our cumulative finality doctrine, we finally had jurisdiction as of February. When the two were dismissed, that wasn't appealed. So all we had before us on appeal was Defendant 1. We vacated the order on Defendant 1 and sent it back to have Defendant 1 subject to trial. The case was Tell me what happened after that. Well, there was a part in the middle there. When our appeal was first sent back, Your Honors found that there were still claims open. It was in the order that we were sent back to. Except the order directed us only to retry the October 14 order. We only addressed the October 1, 2013 order. That's all we addressed on appeal, and that's what we sent back. That is correct, Your Honor. There was no issue before us on Defendants 2 or 3. That is correct. They were dismissed. So the only thing decided by us was to send it back to have a trial on Defendant 1. Actually, the court said that there were still claims open against Grid and Lifestore, and that's why it was sent back. And then Well, how could there be claims open? They were dismissed. That was in the order. That was in the opinion. Where did we say that? Can you point us to the language that you're referring to? That is in the order from 2015. If you go to I don't have that order separate. It was a footnote in the opinion from 2015. If you give me one second, I'll find it for you. I think it's in the 160s. It says, Because there are still claims pending. And this was part of the whole case below. There was a fight about that, that there were still claims pending. If you look at 146 in the joint appendix I'm sorry, that's not the one. You want me to hear that? You want to hear the mandate? Yes. Judgment of the district court is vacated. The court's October 1, 2013 order dismissing Houck's claim against a substitute trustee is reversed. And the case is remanded for further proceedings.  And the problem with that is, The problem that we had in the lower court was that there was a footnote in the order that said that the claims were still live against Grit and Lifestore. You mean in the district court or the bankruptcy court? In this court, your honors found that there were still claims live against Grit and Lifestore. And I apologize that I can't- No, that would be true before February. We may have been reciting it in the facts. Because it was interlocutory. That's why we concluded it was interlocutory. But this is the 2015 opinion. And that's why there was so much of a fight downstairs. They really battled this out. But my point is that what made it interlocutory is the claims against defendants 2 and 3 were still open. And when they were dismissed in February, then they were dismissed. And that was never challenged. Well, the July 15 opinion from this court, but I can address more. I can put that at ease for quickly. But it's clearly not pending anymore. That's my point. Factually incorrect. Defendants 2 and 3, by the February order, February 2014 order, they were dismissed from the case. And nobody challenged that. Well, I had to file the motion for clarification in this court, which is why we were brought up for oral arguments. I had to make that motion for clarification because the lower court said, no, it's dismissed. And I said, look, it says in the opinion that they're not dismissed. But I'd like to mention, to address the vacator. I've only got six minutes left. Rice v. Alpha, the Fourth Circuit said that when a judgment is vacated, it never existed. The First Circuit said it wipes the slate clean. How does that get you anywhere? You never appealed. We don't need a final judgment. What we need is some place where you challenged, before the case was ended, some place where you challenged the dismissals of defendants 2 and 3. It was never challenged. The case went on against defendant 1. It went to final judgment. And then it was settled. The judgment was settled. That ended the case in its entirety. Your Honor, the Supreme Court has said. No, no, I want you to address the facts. And then we can talk about the law. We understand a lot of the law. But let's go to the facts. Isn't that what happened? Well, this court, in the July 15, 2015 order, said there are still claims open. It looked like there were because of the way. See, only Grid had appealed. Livestore didn't appeal. I mean, I'm sorry. Grid moved to dismiss. Livestore didn't move to dismiss. I didn't mean to speak over you, Judge Nimoy. No, it's an impossibility that claims existed until, I mean, after February 14. They did exist before February 14, which made your appeal interlocutory and inappropriate. So the Supreme Court in Camerata said that the point of vacator is to prevent an unreviewable decision from spawning any legal consequences. In U.S. Bancorp, the Supreme Court said that it clears the path for future relitigation. And what it does, it says in Bancorp, we look to notions of fairness. It's an extraordinary remedy based in equity. You can cite all of the principles, but you're not getting around the mandate and what we decided. I understand. We did not review claims, the dismissals of claims two and three. What we did is we reviewed the claim against the substitute trustee. We vacated that order in particular and sent it back for further proceedings against the substitute trustee. That is correct. Okay. Now, so there is no, those other people were never in the case. Now, sure, we vacate. You could have maybe reopened at that time, tried to, but they were dismissed and that was never challenged. My point is when you get to final judgment after the judgment against the substitute trustee and that case was settled, doesn't that end the whole case? It would if that judgment still existed. Pardon me? It would if that judgment still existed, but the Supreme Court has said that that judgment no longer exists. It says, and the point is that it's an equitable remedy and it's an extraordinary remedy. Vacator is, vacator reaches back in time and pulls it out as if it never happened. And that's what this court has found. Mr. Perry, I think what would be extraordinary is that we would countenance vacating a judgment of dismissal against two defendants who never appeared in our court in that subsequent appeal. I mean, that seems kind of very strange, don't you think? Well, if we, if only STS, I'm sorry, if STS had never been dismissed and it was only Grinnell Life Store, we would be in exactly the same place. Grinnell Life Store would have never been able to do anything until now. We would not have had any appeal until 2021. That it would be exactly the same course because there would never have been any appealability at all. But the vacator, we believe, is so strong that as it, as the… And you think it reaches back to parties who didn't even appear in the subsequent appeal to defend the order of dismissal? Interestingly, they did appear in bankruptcy court and our… I'm talking about appearing in our court. I believe, I understand what you're saying. Our appeal was only against STS. That's what started the appeal. And that was on appeal. Knowing that that would be reversed and vacated like it was and that the judgment, the only separate document judgment that is necessary for an appeal was vacated. We knew that was going to happen. Look, the vacator, you keep hopping on it. We did vacate it. But what did we vacate? We vacated everything that was before us. You appealed, wrongfully appealed, an interlocutory order. We lacked jurisdiction at that point. When the other two defendants were dismissed from the case below, we finally got jurisdiction because the only person left in the case was a substitute trustee. We then adjudicated the substitute trustee and sent it back for trial against the trustee. There was no claim made that the two persons dismissed, which was part of the judgment. Now, your argument is when we vacated the judgment that we had before us, that left open a claim against the two dismissed. But you don't get around the fact that they had been dismissed. And nobody challenged it. And that case was finally decided in its present form, which was just against the substitute trustee, was finally decided. Now, where do we get after that case? The whole case is done. The whole case is done. You want us to go back and review the dismissal order of 2014, eight years ago. That's what we would have to do if SDS had never been dismissed, right, which is what the vacator does. If this case had never been dismissed, we'd be in exactly the same place right now because we would have had the final judgment in 2021. But they were dismissed way back then, and I agree with that. It's a long time ago. Let's forget the peculiarities of the interlocutory appeal. You have a lawsuit against defendants one, two, and three. The court throws out all three of them. Defendant one appeals. Defendants two and three don't appeal. What do we have before us? Just defendant one. And if we vacate that, then it continues against defendant one. But we don't reopen defendants two and three. That was never brought to us. Now, when defendant one is finally adjudicated and there's a final judgment as to defendant one, that ends the whole matter. And now you're coming back and saying, oh, I want to go back and get defendants two and three in here. Well, we actually tried to reopen the case based on because the order was so bad and everything that the magistrate court did was wrong. What order was so bad? The order from the magistrate court. There were so many problems with it. I thought you settled it. No. What happened was after the bankruptcy issue, there was a state claim still pending, and they appealed the bankruptcy order just to make sure they were out of the state claim. That's the only reason they appealed. And we settled it after we dismissed the state claim. That's the only reason you can ask. But your claim against the substitute trustee was ended with a settlement, right? That's correct. All right. Now, why didn't that end the case? Because the vacator of the 2014 order left the case open again. But you settled it. You settled the only thing that was open. We never opened up the dismissal of the other two. We settled the STS claim. And as a matter of fact, it wasn't ended because the order that was sent up from the bankruptcy court, the district court never affirmed that order. The case was still stayed. And I said, where's my final judgment? And they said, you'll have to make a motion in order. Do you know why we had jurisdiction in the first place in our opinion? We had it because defendants two and three were dismissed. That's the only reason we had jurisdiction. And at that point, we had jurisdiction over one defendant. The other two had been dismissed and did not appeal. Well, as I said, it is an extraordinary remedy. But all the case law says that it makes it as if it never happened. And if it never happened, it never happened. I can't find in the record any notice of appeal by you as to life store and grid in 2013 or 2014. That's correct. Because at that point, it was only STS dismissed. And we didn't see any dismissal of grid and life store. Except when we invoked the cumulative finality doctrine. That's correct. And that was dismissed. You should have filed an amended appeal or a second appeal as to the dismissal of those. And you didn't. Well, the way we saw it was that only life store had appealed. I mean, only grid had appealed or had been dismissed. I say appealed. I'm sorry. Only grid had moved for dismissal and had been dismissed. Life store didn't even join the motion to dismiss. They were dismissed, right? They were dismissed. That's what the court found eventually. That's what this court found eventually under cumulative finality. That's what the district court did. Defendants two and three, life store, whatever their names are, two and three were dismissed from the case, weren't they? It didn't appear that way. But we will agree with this court that they were. What did the February 14 order say? It was a statement that the case is dismissed. It said grid had filed. And they closed the case, right? That is correct. Now, I don't understand what you're arguing with the facts of the case. I mean, the facts of the case is the district court dismissed the two defendants and closed the case. Isn't that right? Well, what actually happened was that we appealed. No, I'm asking you, did the court dismiss the case and close the case? The court did dismiss the case and close the case. Okay. Now, why didn't that end it down there? It would have if this court had not vacated the judgment. There is a requirement, and it says a mechanical. The Supreme Court has said there's a mechanical application required for a separate docket, a separate docket of judgment. And that is what's appealed. That's what starts the clock and vacator. Did you ever challenge the dismissal of defendants two and three? I am now. I'm talking about before the case ended. We didn't realize they were dismissed, honestly. We didn't realize Leister was dismissed. What are you doing when you're reading the February 14 order? You didn't realize they were dismissed? Your Honor, I'll find in here that the— What does the order say? You just agreed with me that the court dismissed it and closed the case. Well, it said that the motion by GRID is granted and the case is dismissed. And I took it that the case against GRID was dismissed. And the case was still pending against STS. The judgment against—the 2014 judgment that said the case is closed was vacated, and the case continued. Just exactly as if only GRID had been—I'm sorry. If only Leister and GRID had been dismissed and STS had never been dismissed, we'd be at exactly the same place right now. All right. Why don't we hear from your colleague? Thank you, Your Honor. All right. Mr. Gaylord? Good morning, Your Honors. May it please the Court, my name is Ryan Gaylord. I represent the appellees, Leister Bank, and GRID Financial Services. This court must ensure that it has jurisdiction over each and every appeal. The limits on federal appellate jurisdiction are meant to balance the court's interests in finality and judicial economy against the party's due process rights in appropriate judicial review of the district court's conclusions. In this case, the appellant seeks to expand those limitations far beyond what the statutory framework will allow, and accordingly, the appellees believe that this court should dismiss the case for lack of jurisdiction. The procedural history of this case is complicated, but despite the appellant's attempts to muddy the waters, the appellees agree with this court that the facts governing this court's exercise of jurisdiction are very straightforward. The district court entered a final judgment on February 20th of 2014, including a separate document pursuant to Rule 58. That's at page 117 of the joint appendix. This court, in its subsequent proceedings, explicitly recognized this order as a final judgment. That's at pages 144 and 45 of the joint appendix, and the district court agreed in that conclusion at page 349 of the joint appendix. Section 2107 and Rule 4 of the Federal Rules of Appellate Procedure require civil litigants to file a notice of appeal within 30 days of the decision for which they seek review. In this case, that time period elapsed and concluded on March 24th, 2014. The appellant did not file any notice of appeal at all between February 20th, 2014 and March 24th, 2014. The reasons for this are unclear. In the supplemental brief, the appellant indicates that it was a strategic decision because she believed that her interlocutory appeal of the 2013 order was so certain to be successful that she had no need to appeal the 2014 orders. In oral argument today, the appellant indicates that this was an error because she mistakenly believed that there were still claims pending. Mr. Gaylord, where is that in the record about the extent of success, the likelihood of success? That's in the appellant's supplemental brief that was submitted last week, Your Honor. Okay. But in any event, regardless of the motives, no notice of appeal was filed, and the subsequent proceedings in this court and the district court occurred as two completely different parties literally years after the appeals period had already opened and closed. In Hudson v. Pennsylvania County, this court held that any civil litigant must appeal within 30 days of the decision for which they seek review as required by Section 2107, and by the simple terms of that holding, this court simply lacks jurisdiction to review the 2014 orders today. I'd like to clarify two things that came up in the appellant's oral argument this morning. The appellees believe that the appellant's citations about how a vacated decision ceases to exist are not on point because they refer to vacature of orders and not vacature of judgments, and that's clear in the procedural history of this case. This court can reverse an order, sending it back to the district court with instructions as to the appropriate outcome, or it can vacate an order, sending it back on grounds that the decision shouldn't have happened at all or should happen with an entirely blank slate under different circumstances. And when the appellant's case is stating that the vacated decision ceases to exist, he's referring to the latter. That's vacature of an order. What happened in this case was vacature of a judgment, and the appellees believe that the purpose of a final judgment, especially in the context of a Rule 58 separate document, is to indicate to this court and to the parties that the time for appeal has begun. The district court essentially, with its Rule 58 judgment, places a wax seal on the case file and says, we're done here. There's nothing left to do. All claims have been adjudicated, as do all parties. And so when this court, you know, in 2015 vacates the judgment, it simply lifts the wax seal to open the envelope back up and send it back to the district court and say, you know, respectfully, you have more work to do. Not all claims have been adjudicated to all parties because you should have reached a different outcome as to, in this case, the trustee. That doesn't mean that the other parts of the envelope or the envelope itself never existed. And to illustrate this, you know, we simply have to imagine a criminal defendant who successfully appeals his sentence, perhaps on grounds that he was improperly sentenced as a career criminal. This court, you know, if that appeal were successful, would vacate the judgment and remand for resentencing, an order almost identical in language to the mandate in this case. On remand, no one would doubt that the underlying conviction of the criminal defendant had been reversed or vacated. They wouldn't have to conduct a new trial for the defendant because the other parts of that envelope, the other parts of the case file that were not before this court were left undisturbed. And so in that context, it doesn't miss Mr. Perry's reference to whether the orders dismissing GRID and Life Store would have been interlocutory in between 2015 and 2021 is a red herring, right? Because by then, the 2014 orders were statutorily barred from appellate jurisdiction regardless. Just for example, if the trustee had instead prevailed on appeal in 2015, then the 2014 orders would no longer be interlocutory if the appellant sought to seek review of those orders in 2015 or 2016. But this court would have no difficulty dismissing such a challenge as untimely because it was noticed over two years after the time for appeal had already concluded. So that's the appellee's view. Is there any order or release in the file as to Life Store and GRID when they were dismissed? Was there a release sign or an order saying they're dismissed? Yes, Your Honor. That's at page 117 of the joint appendix. After the order resolving GRID's motion to dismiss on subject matter jurisdiction grounds, the district court entered a judgment stating that the case had been dismissed and was closed. Does that answer your question? Yes. Am I understanding your question? Okay. Thank you, Your Honor. Turning to the second point, I want to address the appellant's argument that, which came up at the very end of Yael's conversation a few minutes ago, that because the dismissal of the trustee was reversed by this court's decision in 2015 and was not reinstated until 2021, that that constitutes a new final judgment that somehow carries forward the district court's decision in the 2014 orders, making them eligible for review. And I think, Your Honor, the critical principle here is that a final judgment serves to start the appeals period for a particular party. But once that period concludes, the issuance of a subsequent final judgment as to completely unrelated parties on completely unrelated claims doesn't reopen the window or create a new window for appellate review. And this comes up in a lot of contexts. His argument, apparently, is that we had before us the case against the substitute trustees, and we had jurisdiction because the other two were dismissed. When we vacated the judgment against or the order against substitute trustees, somehow the dismissal orders no longer had effect because we vacated the whole judgment of the district court. And the answer is maybe we might have vacated it, but we never changed the dismissal orders or never reversed that part. And that was never before us. All that was left in the case at that point was the substitute trustees, and we ordered specifically in the mandate that that was all that was going back. So that could not be aggrandized under our mandate rule. The district court only thereafter had jurisdiction to adjudicate substitute trustees. And the only way that he could have benefited by the vacator on a broader scale was to have appealed the dismissal orders of the other two defendants, and he never did that. But that's the conceptually what I think we have before us. And let me ask you this. He got a pretty good-sized judgment against the substitute trustees. Was that all the damages that were provable? And why is he seeking more relief against the other two parties? Yes, Your Honor. The affiliates believe that that was the full extent of the damages, and this is apparent in terms of the statute. Section 362. We don't need to argue it. I just wanted to know if your position was that he received all his damages in that trial. That is our view. And I'm trying to wonder why he's making this big effort to go back now and reach and get the other two defendants when he's already been restored or made whole by the damage judgment. It is confusing, Your Honor, especially given that the appellant's opening brief at page 17 of that document specifically states that he is entitled to monetary relief against grid and life store on the basis of the exact amount of monetary damages that he received from the district court against the trustee. And in the affiliate's view, this means that that federal claim under Section 362 is clearly new as to the affiliates because the district court considered the evidence, concluded that the appellant had incurred about $21,000 in actual damages and about $109,000 in attorney's fees, and it awarded her those exact amounts. Contrary to the appellant's assertion, there weren't three different violations of the bankruptcy stay in this case. There was one violation of the stay in which the three parties were allegedly involved in varying capacities. And so to the extent that the appellant seeks to establish new damages on appeal as to grid and life store, first, it's contradicted by the record and the district court's factual findings, the bankruptcy court's factual findings as to damages. Second, it should be considered waived on appeal because it wasn't, those damage figures weren't mentioned in the appellant's opening brief. So, you know, the appellees believe that even if the appeal were timely, even if the notice of appeal did properly designate the order from which the appellant seeks to appeal, this court still lacks jurisdiction and should dismiss the case because there's no case or controversy before it. There's no basis for damages against the appellees in this case. Is the better doctrine, if we were to agree with you, is the better doctrine to dismiss this because the appeal wasn't taken in 30 days as required by rule and statute, or that the plaintiff forfeited any claims against the other two by not appealing the initial order? The appellees believe the proper basis for dismissal would be an untimeliness pursuant to section 2107. That's a statutory threshold that the appellant must clear before this court could even assess the merits or the substance of, for damages claims against the appellees. So that would be, that would be the threshold step in the analysis, your honor, in our view. Your colleague on the other side indicated that our 2015 opinion somehow, somewhere, which I haven't seen yet, gave some hint that there were still live claims remaining against Lifestore and Grid. Do you see that anywhere in the opinion? No, your honor. I mean, the appellees believe with Judge Neumeier's suggestion that if the 2015 opinion was going to adjudicate or affect our legal rights or liabilities in any way, including liability for, you know, facing a potential appeal, then we should have been given an opportunity to receive notice of that appeal, appear in this court, and make arguments. Well, there was an amicus, but I suppose you wouldn't be satisfied with that. Well, the amicus is a separate issue, but it's not relevant to what's before us today. I suspect my guess would be that what the appellant refers to in terms of indication of remaining claims is this court's order in August 2014, which is at page 121 of the joint appendix, in which this court initially dismissed the appeal as to the trustee as the appellees feel that this is, you know, this court's decision. At that point, there were claims still pending. That's incorrect. I don't believe that's correct, your honor. That was in August, 2014, six months after the dismissal of Grid and Lifestore in February, 2014. Oh, I see. I got you. But it doesn't ultimately matter, your honor, because. What did we say in our initial dismissal for lack of jurisdiction? This court held in that case, in that decision, that the appeal of the dismissal of the trustee was interlocutory and that it should be dismissed on those grounds. At that point in time, there were open claims against Grid and Lifestore. Not in August of 2014. That was six months later. You're missing my point. When we dismissed this appeal for lack of jurisdiction, he had appealed only the order against substitute trustees. There were open claims still pending against two others. That's why it was interlocutory. And we dismissed it. He then asked for reconsideration of that. And we applied the cumulative finality doctrine because the other two had been dismissed. Yes, your honor. And in any event, it doesn't affect the finality of the district court's judgment because. Well, that isn't my point. I'm trying to figure out why he thinks claims were pending. And the claims were pending when he filed his appeal. And those claims were thrown out in February of 2014. And at that point, only at that point, did we have jurisdiction under the cumulative finality doctrine, which is sort of a catch-all excuse to let a person stay on appeal when he improperly appealed. I believe we're in agreement on those facts, Judge Niemeyer. I see my time is winding down. Just one last point to address the idea, as I referenced before, that the district court's new final judgment in March 21 carried forward the dismissal of Grid and Life Store from 2014. This is meritless, I think, under the plain terms of this court's holding in Caldern v. Geico from 2015, where it held that, sure, prior interlocutory orders are rolled up and appealable from the final judgment, of course, because you can't appeal them before then. And Judge Richardson wrote some helpful guidance on that point in the West Virginia Pneumonicosis Fund case that is cited in the Appellee's Supplemental Brief. But this only applies to, and this is from Caldern v. Geico, interlocutory orders from which no appeal lies. And so any attempt by the appellant to say, oh, my appeal from the final judgment in 21 includes the 2014 orders, which became interlocutory with the reversal of the dismissal of the trustee, is meritless, because those orders were not interlocutory orders from which no appeal lies. Those were final binding dismissals of the appellees that this court and the district court both agreed. Well, he wants to try to get some comfort from the vacator of the appeal against substitute trustees. But the problem with that is that at that point, the grid and life store were already out of the case, and that had never been appealed, and we never addressed it. And the case was now pared down to one defendant, and we sent it back for proceedings against that one defendant. And that's all that was in the case at that point. Yes, Your Honor, and the appellees believe that that's clear from this court's mandate in 2015. And, you know, to be clear, there's no equitable component to the analysis here. You know, appellate jurisdiction is governed by statute. There's no exception. There's no excusable neglect. This court has jurisdiction under the terms of the statute, or it doesn't. And although this rule isn't necessarily negotiable, it does fit with the balancing of interests in this case, because at the time of the final judgment, the appellant had no idea how this court or the district court would rule on her pending challenges to the dismissals of the various parties, including her motion for reconsideration, her interlocutory appeal to the trustee, and so on. And at that point in time, as Your Honor has suggested, she had a very simple and clear opportunity to obtain appellate review of the dismissal of Grid and Life Store in February 2014, and that's filing a notice of appeal within 30 days before March 24th, just like any other civil litigant is asked to do. And in this case, on the facts of this case, the appellant is clearly familiar with the letters and gears of the federal courts. You know, she was filing immediate interlocutory notices of appeal from the district court's prior orders in this case. She filed a petition for mandamus with this court. She filed motions for reconsideration. You know, this is not a party who's being left out in the cold because she is, you know, overwhelmed by the confusing procedural posture of this case. Instead, she elected to proceed, instead of directly appealing the dismissal of the appellees, she elected to proceed on her pending appeal as to the trustee. She was entitled to this choice of litigation strategy, and it ended up being a highly profitable one for her. And so, you know, to safeguard these important statutory principles of finality and due process, you know, it's important the appellees feel that litigants only get one bite of the apple when it comes to appellate jurisdiction, and that, you know, it'd be a judicial overreach in this case for this court to exercise jurisdiction when the relevant claims were dismissed over eight years ago, the appellant completely failed to designate the order that she seeks review of in her notice of appeal, and she has already recovered the full amounts in controversy as requested by her complaint. And accordingly, you know, the appellees respectfully submit that this court must dismiss the appeal for lack of jurisdiction. All right. Thank you. Thank you, Your Honor. All right. Mr. Perry? A couple things, Your Honor. We would argue that vacater is as strong as any statute, but if the court would direct its attention to JA 123, I found the footnote. Now, this happened in August 27th of 2014, and it says that it is possible to cure the jurisdictional defect. However, some claims against Defendant Lifesore Bank are still pending in the district court. A final order has not yet been entered, and that's the ruling of this court in August 27th of 2014. Their claims were still open, according to this court. But I would also like to address the argument that she was made whole, and the bankruptcy court found that she was not made whole. First, Well, that isn't really before us. It was a curiosity to me. It seems to me that after you got this what appeared to be a fairly fulsome judgment, then all of a sudden you decide to go against the others. That's not before us. I understand, but I feel like it would affect the court's decision, and she was not made whole by a long shot. One of the problems was the house that she was living in burned to the ground, and we didn't have documents to prove damages, which we've reconstructed some since then. But the court found that on page 471, the court said the plaintiff most likely failed to prove the true extent of her damages, but she did show entitlement to a significant award. Not only that, but the defendant, the appellees are trying to say that STS can set aside the 362 damages that would be filed against Lifestore and Grid. That would be a huge due process problem because punitive damages are exacted against an individual for intent. How could STS be punished for Lifestore and Grid? She wasn't made whole by a lot. Not only that, there's emotional distress caused by the two defendants. She had to buy her house back after all of this, and she had closing costs, and while she didn't have her house, it was a flower farm. They took the topsoil off the farm, so she's got to fix that. There are many damages that were not considered by the bankruptcy court. She's not been made whole at all. She only got $20-something thousand for her farm. Again, I would say that the vacator rule is as strong as any order about a dismissal. Well, I can't for the life of me understand your opponent says that there are orders of dismissal against Lifestore and Grid in the record. Why is that not conclusive? Because they were vacated. Who vacated? They weren't parties to the appeal. This court vacated the only separate judgment that was required by Rule 54 and 58. Rule 58 says there must be a separate document, and that is what is appealed. Except we vacated only the order against substitute trustees in our mandate. That's all we did. The judgment was now narrowed. The district court had no authority at that point to go beyond the mandate. So, if we had the full judgment and vacated the full judgment, we sent back only a part. So, looking at the timeline... No, no, I'm saying a 2015 opinion. We only appealed the STS dismissal because that's all that was fully dismissed. There were still claims against the other two. You can't... We said, we counted it as an interlocutory appeal. We requested an interlocutory appeal. Then, as that was happening, there were two other orders the lower court was dismissing on grounds that this court found absolutely untenable. Well, the court couldn't possibly do that because LifeStore and GRID were not parties to the appeal in 2014, 2015. Right. It was only STS on the appeal, and GRID and LifeStore were still in the case. The lower court dismissed GRID and... Well, actually, they dismissed GRID and LifeStore for one motion on certain things, and then there was another motion made by GRID saying that we didn't have jurisdiction, original jurisdiction on the 362 claim in district court. Of course, there's jurisdiction there. And so, then when only GRID filed a motion to dismiss, and this court found in August that there were still claims pending against... Didn't we vacate? We reconsidered that one, didn't we? No, Your Honor. That's why I got sent back. That's when you told me... No, no. Just listen to what I'm just saying. I just looked at that. That's a per curiam order that did not apply the accumulative... Correct. And you asked for clarification of that, and we reopened it and applied accumulatives. At that point... So, that opinion was overruled or changed. We did reconsider it. Okay. Because it was... Actually, it was factually not totally correct. So, what we're determining today is how strong is vacator? Because the Supreme Court has said that the point of it is to make an unreviewable decision, wiping the slate clean, leaving an unreviewable decision from spawning any legal consequences. Well, why didn't you appeal the February 14 order when the court dismissed the claims, closed the case, and instructed the clerk to close the case? That's an excellent question. Final judgment, entered a separate document, and closed the case. Why didn't you appeal that? Because I, as this court, thought there were still claims pending against GRID and Lifestore. Well, how could there be if they dismissed them all? We all thought the same thing, Your Honor. I said, why did you... I didn't ask you what you thought. I said, why did you think it was open when the court closed it? Because only GRID moved for dismissal. And the way the court stated the order, it said the case is closed. It didn't say that the GRID and Lifestore are dismissed. It said the case is closed. And it closed the case and told the clerk to close the case. They did. They did. That makes it pretty clear. But this lower court has made some other mistakes. For instance, they never gave us a final judgment in 2021. I had to move the court, and I'll be honest with you. I called up. I thought they accidentally closed it. The clerk called me and yelled at me, said, you've got $125,000. What more do you want? I didn't know he was the gatekeeper for this case. But they left the stay on, and they closed the case without a final judgment. So he said, you'll make a motion and order. I said, okay. So I filed the motion. They reopened the case, and he then affirmed the bankruptcy court. He had already sent an order up. They just didn't even bother affirming that order. So finally, they affirmed that order and gave us the only judgment that exists in this case. The only separate document judgment under Rule 58 and 54 happened in 2021, and we immediately appealed that. Mr. Perry, can I ask a question about our opinion, July 2015 opinion? You rely, I think, on the credo paragraph where we say the judgment of the district court is vacated, and you argue that that somehow vacates the judgment as to all defendants. Is that right? Yes, Your Honor. Okay. So if we had been a little bit more specific and said that the judgment of the district court is vacated as to the trustee, the order is reversed as to the trustee. Would you have any argument? I would have no argument. But, of course, that presupposes that we actually had the authority to vacate the entire judgment. And what is our authority for doing that? I can brief that, but I don't have that answer for you right now. I know that the court has authority to vacate. And, again, as a general matter, sure. But the question is, in this case, given the procedural history that's been outlined here, what would have been our authority to vacate the entire judgment? It is based in equity. And in equity, because of – if you look at those lower court's orders, when they did things like they added in the balancing test that was a lawful alternative explanation and they said that there was no 1132 – I'm sorry, 11 USC jurisdiction in district court, I mean, there were some terrible decisions in that that this court absolutely overturned every single part of that order. And in equity, the court reached back and said, no, we're going to keep going. Those dismissals were absolutely unfounded in any way under law. And so this court, we believe, reached back and said, the whole judgment is done. We're going to do this right. And if you dismiss these defendants, you dismiss them under law. And that's what we were going on – have been for nine years or eight years. Because it's based in equity. And it was unequitable for those orders to stand and dismiss these defendants on law that did not exist. The idea that 11 USC has no original jurisdiction in district court, the idea that they dismissed the state claims based on that and this balancing test under Iqbal Twombly, none of that was right. None of it was fair. None of it had any basis in law. So, yeah, when this court came back – It's a little troubling that you've merged all of that because really what was before us, the initial flaw was your appeal on the interlocutory, which created a procedural problem. But let's assume – let's assume that we had all three defendants dismissed in a single order. That was what the February 2014 order was tantamount. It closed the whole case. Everybody was dismissed. And only the substitute trustee appealed to us. And we vacated the judgment that was before us, which was as to the substitute trustees, and sent it back. The others were not in because they never appealed. They were not before us. And we could not adjudicate any claims with respect to that. And that's what we – our mandate reflects. We – in the mandate here, we addressed only the October 1 order. I understand that. So, what happened? We were on appeal with STS. That was ongoing appeal while the other two were dismissed? They were not on appeal. It was – it would have been dismissed. It became subject to jurisdiction when the other two were dismissed. And then we had jurisdiction. So, the effect of the February 2014 district court order was to say, Fourth Circuit, you have before you an appeal by substitute trustees. You do not have appeals as to the other two. They've been dismissed from the case. And nobody appealed those. If you will look at the timeline, you will see that the pending order – I mean, I'm sorry, the pending – just appeal, I'm sorry. The appeal was pending against STS while those other orders came out. Right. That's what human finality is. You understand that doctrine, don't you? I do understand that. But the appeal was ongoing against STS. It hadn't been kicked back yet. And we knew it was an interlocutory appeal. We requested an interlocutory appeal because it was such a bad order. And we requested that. And those other dismissals came during that. And as I said, the only grid moved to dismiss. And this court thought the same thing we did in August of 2014 that there was still – Give up on that order. We vacated that, reconsidered it, and wrote our opinion in 2015. You get no benefit from that per curiam one-page order. Correct. Okay. But in the equity, we're saying – We're not in equity. We're in the court. We're under the rules of procedure. And we have rules about what's final and what's not final, what's before us, what's been waived, what's been – has to be filed timely. These are all rules that have to be followed. And when we issued our opinion, it was absolutely clear we were addressing substitute trustees and sending them back for trial with respect to them and did not address the dismissal of the legitimacy of the dismissal of the other two. And the 2014 order did not address life store because only grid had moved to dismiss. Your Honor, the Supreme Court said in U.S. Bancorp that equitable principles are implicit in vacator. That's exactly why there is vacator is based in equity, and it's an extraordinary remedy. Thank you. Thank you, Your Honor. Yeah. All right. Thank you. This has got a complex history. We'll sort through it and review what you have done both with your briefs and supplemental briefs. We thank you for that. Our procedure normally now would be to come down and greet you. That's an old tradition of the Fourth Circuit, and we're very proud of it, and we have not abandoned it. But because we're still under some protocol rules under the pandemic, we're not going to come down and greet you today. But we do thank you for your arguments and hope you come back and don't hold against any of us our tough questions. No, Your Honor. We appreciate your arguments. I would like to say that I brought my daughter today. I just wanted to present her to the court. Oh, please do. This is Reagan Perry, and she just wanted to see this process. Well, welcome, and you tell – in your report, you indicate how persuasive – I mean, how persistent your father was, how sophisticated his arguments were, and you can say anything nasty about me about my questions. I'll be all right. Thank you, Your Honor. Yeah. Have a good day. We'll proceed on to the next case.
judges: Paul V. Niemeyer, Albert Diaz, Henry F. Floyd